**Valerie CLARK, Appellant,**

v.

**WAKEFERN FOOD CORP., t/a Shop Rite # 411, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 30, 2006.

Filed Oct. 25, 2006.

Matthew K. Hubbard, Philadelphia, for appellant.

Thomas J. Bradley, Philadelphia, for appellee.

BEFORE: KLEIN, BOWES and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Clark filed a slip-and-fall action for injuries she allegedly suffered at a Shop Rite store. She appeals from the denial of her motion to amend the complaint to correct the name of the corporate owner of the store and the consequent dismissal of her complaint on statute of limitations grounds. We believe the refusal to amend the complaint was error and therefore, reverse.

¶ 2 In this case:

(a) the defendant store was served under the name of Shop Rite, which is its "corporate name" under Pa.R.C.P. 2176, as it is the name under which the corporate entity that owns the store conducts business; [1]

(b) the corporate owner had actual knowledge of the claim and the complaint; and

(c) the corporate owner's agent, the insurance adjuster, provided the wrong corporate name to Clark's attorney.

¶ 3 Therefore, although Wakefern may be dismissed from the complaint, we are constrained to reverse and remand for the amendment of the complaint. The defendant store may then file an answer or other pleading, containing the actual name of its corporate owner.

---

1. The true name of the corporate entity that operates the Shop Rite store is still uncertain. The petition to amend filed by Clark asked to amend the complaint to Shop Rite of Chelten, the name that appears in the telephone book. In its brief in response, Wakefern Food Corporation ("Wakefern") stated that Trio Food Centers, Inc., a Pennsylvania corporation, owns and operates the store. Clark then, in a petition for reconsideration, asked to change the name on the complaint to Trio Food Centers, Inc.

## I. Facts and Procedure

¶ 4 Clark claims that on December 5, 2002, she slipped and fell on ice and snow that had accumulated outside the entrance to the Shop Rite supermarket at 310 West Chelten Avenue in Philadelphia. By letter dated May 8, 2003, Clark's counsel wrote to Shop Rite's store manager advising of the claim. By letter dated June 20, 2003, Shop Rite's insurer, Lumbermen's Mutual Casualty, acknowledged the claim, listed the insured as "Shop Rite # 411" and sent counsel a medical release authorization form. By letter also dated June 20, 2003, Lumbermen's requested counsel to provide Clark's date of birth, social security number, and place of residence and advised counsel to call if he wished to discuss the claim further. By letter dated July 28, 2004, Broadspire Services Inc., acting on Lumbermen's behalf, acknowledged receipt of counsel's letters dated April 30, 2004 and July 8, 2004, and requested further information. **The Insured was listed as "Wakefern Food Corporation."**

¶ 5 When the matter was not resolved, service of the complaint was made on "Wakefern Food Corporation t/a Shop Rite # 411" on December 10, 2004 by serving the person in charge of the store where the fall took place. As it turns out, the Shop Rite in question was not owned by Wakefern, a New Jersey Corporation, but instead by a different entity.

## II. Discussion

### A. Service was made on the proper party.

¶ 6 It is not disputed that service was properly made at the store where the alleged slip and fall took place. The issue then becomes whether the motion to amend the complaint is to correct the name of a party or to bring in a new party that is separate from the party named.

¶ 7 The Rules of Civil Procedure provide that actions against a corporation or similar entity shall be prosecuted in its "corporate name." Pa.R.C.P. 2177. However, this "corporate name" is not only the formal corporate designation. The corporate name is defined in Pa.R.C.P. 2176:

> "corporate name" means *any name, real or fictitious,* under which a corporation or similar entity was organized, *or conducts business,* whether or not such name has been filed or registered.

*Id.* (emphasis added). The defendant in this case is certainly the Shop Rite store upon whose property Clark allegedly fell. It is undisputed that the store is operating as a Shop Rite supermarket. Although the number of the store may or may not have been correct in the caption, "Shop Rite" was served and the owner and operator of the store is using the corporate name, "Shop Rite." Therefore, under the rules, there was proper service on the corporate owner of the store. Thus, the proposed amendment is not an attempt to add a new party since the party named was "Shop Rite," the corporate name of the store's actual owner.

¶ 8 Our Supreme Court addressed this issue in *Gozdonovic v. Pleasant Hills Realty Co.*, 357 Pa. 23, 53 A.2d 73 (1947). In *Gozdonovic,* the plaintiff sued a defendant designated as "Pleasant Hills Realty Company, a corporation." After the statute of limitations expired, Gozdonovic attempted to amend the caption to change the description of the entity from a corporation to a partnership. The Court permitted the amendment, stating that the test was whether "the right party was sued under a wrong designation" or "a wrong party was sued and the amendment was designed to substitute another and distinct party." *Id.* at 76.

¶ 9 In the case of *Waugh v. Steelton Taxicab,* 371 Pa. 436, 89 A.2d 527 (1952),

our Supreme Court again held that an amendment to correct the caption should be permitted. In that case, Waugh was hurt in a cab that bore the legend, "Steelton Taxicab Company." The suit was brought against "Steelton Taxicab Co." However, Steelton Taxicab Company was not a corporation, but instead the cab was owned by Anthony John Kosir, who did business as Steelton Taxicab Company. The Court stated:

Legal principle and precedent, as well as elemental logic and justice coincide to authorize the filing of the amendment. The sheriff served the complaint at Kosir's business office and upon Pearl Clark, his employee. There is no doubt, therefore, that the correct agency charged with responsibility for the accident was served even though under a wrong name.

It would be strange indeed if the law would permit a person actually responsible for a civil or criminal act to escape liability because the summons or warrant served on him named him Richard Roe instead of John Doe.

*Id.* at 528. Approximately ten years after *Waugh,* our Supreme Court ruled similarly in *Powell v. Sutliff,* 410 Pa. 436, 189 A.2d 864 (1963). In *Powell,* a summons was served for a trespass action on the person in charge of a Chevrolet dealership in the name of "Ellis Sutliff and Leo E. Sutliff, individually and as partners, t/d/b/a Sutliff Chevrolet Company." In fact, the entity was a corporation. Citing *Gozdonovic, supra,* the Court permitted the amendment to the corporate entity, saying,

The amendment was not an attempt to impose additional liability on the individual owners of the company, but rather merely sought to correct the description of the business entity already made a party to the proceedings. The assets subject to liability were the same both before and after the amendment.

189 A.2d at 865.

¶ 10 In the instant case, it is the assets of the entity operating a Shop Rite at 301 West Chelten Avenue, sued as Shop Rite # 411, which are subject to liability. While Wakefern should not be subject to liability, the true owner of the store where the manager accepted service and the insurance carrier started processing the claim should be. It is frequently difficult for a plaintiff to wade through the corporate morass to identify the titled operator of a store. Often the owner of the property is not the entity responsible for running the store and keeping the walks clean. Stores such as Shop Rite put up large signs, spend great sums of money on advertising, and otherwise induce people to come to a "Shop Rite" store. When the owner of the store wants its customers to think they are at a "Shop Rite," and a customer later sues "Shop Rite" and makes service on the very store premises by serving the person in charge, the actual corporate entity created to own the store should not be heard to complain. To find otherwise would contradict the purpose of Pa.R.C.P. 2177, which permits service on a business entity by the name under which it does business and advertises to the public.

### B. Defendant's agent misrepresented the corporate name.

¶ 11 Clark did not pull the name of "Wakefern Food Corp." out of the blue. It was supplied by Shop Rite's agent, i.e., its insurer. Clark's initial communication was with the manager of the store under the name Shop Rite. This communication was acknowledged by the agents for the store, first the insurance company and later the entity acting to resolve the claim on behalf of the insurance company. It was these

agents that supplied the names "Shop Rite # 411" and "Wakefern Food Corporation."

¶ 12 Therefore, this case fits under the ambit of *Blaine v. York Financial Corporation*, 847 A.2d 727 (Pa.Super.2004). Blaine fell while inspecting a house as a prospective buyer. He tried to negotiate with the Chubb Group of Insurance Companies. The claim representative sent Blaine a letter identifying the insured as York Financial Corporation. It turns out that the owner was not York Financial Corporation but York Federal Savings and Loan Association. Because this Court found "active misrepresentation" on the part of the defendant, it permitted the amendment of the caption. This Court noted that it did not matter whether the misrepresentation was intentional; the determinative factor was that a misrepresentation was made by the defendant's agent.

¶ 13 The same pattern applies in this case. Certainly when a plaintiff serves a store and the store manager passes the complaint on to its insurance company, the insurance company is acting as an agent on the store's behalf and is charged with knowing who employs it and what entity operates the store. Whether or not she did so intentionally, the claims agent misrepresented the corporate name by listing the wrong name as the insured. Clark should not be prejudiced by that misrepresentation.

¶ 14 It is the defendant that has the means to know the actual corporate entity that owns or operates a store, information which is difficult for a plaintiff to ascertain. If the plaintiff serves the manager of the store in question and uses the name of the store, that should be sufficient. Even more importantly, when the plaintiff serves the manager of the store in question and **uses the name of the entity supplied by defendant**, the defendant should not be heard to complain that the name was wrong, and amendment of the complaint should be permitted. The assets of the owner of the store are subject to liability, regardless of the corporate name.

¶ 15 We agree that Wakefern should be dismissed, as that entity has different assets than Shop Rite. But we also find that the suit should be allowed to proceed against Shop Rite's technical owner or operator.

## C. Distinguishable cases where a new entity is added after the Statute of Limitations.

¶ 16 For more than half a century, the test applied when determining whether to allow an amendment to the caption of a complaint has been whether the correct party was sued under the wrong name, or whether the amendment would bring a new party into the litigation.

¶ 17 The distinguishing facts in the instant case on which we hold that Clark is suing the correct party under the wrong name are:

1. Clark served the store against which the claim was made at the store by serving the agent in charge.

The name listed in the complaint was supplied to Clark by Ship Rite's agent, the insurance carrier to whom the store forwarded the claim.

¶ 18 Those facts are not present in the cases which hold that an amendment would bring a new party into the case. It is true that Wakefern should not be a party to this case. However, the issue is whether the real owner or operator of the store doing business as the Shop Rite at 310 West Chelten Avenue, Philadelphia, must defend the action. Many of the cases would support Wakefern's position, but not the position of the true owner or operator of the Shop Rite.

¶ 19 *Hoare v. Bell Telephone Company of Pennsylvania*, 509 Pa. 57, 500 A.2d 1112 (1985), on which Wakefern relies, may support relieving Wakefern of liability, but does not require a refusal to allow the amendment of the caption. Hoare also had a slip and fall claim. When he filed suit, the property was owned by Monarch Furniture Company. However, Monarch had not owned the property when the accident occurred, as it took over ownership six months later. At the time of the accident, an individual named Milton Kotler owned the property. Our Supreme Court held that amending the complaint to add Kotler would be adding a new party since service was never made on Kotler, and there was no indication he had any connection with the property after Monarch took over, although the name under which the business was conducted remained the same. This situation is different, because the same entity owned the store at the time of the accident and at the time the complaint was served. Therefore, there was full notice to the operator of the store.

¶ 20 In *Anderson Equip. Co. v. Huchber*, 456 Pa.Super. 535, 690 A.2d 1239 (1997), the defendant in question was initially identified as "John Doe 1," and the correct defendant, Anderson Equipment Company, was only identified after the statute of limitations ran. The *Anderson* court cited both *Powell, supra*, and *Hoare, supra*, to distinguish the situation where a new party is added from one where the name of the party already sued is amended to correctly reflect the party's name. The Court said:

> Important in this determination is whether different assets will be subject to liability by allowing the amendment.... It is readily apparent herein that John Doe 1 is not an incorrect name of Anderson Equipment Company. John Doe 1 is "an entirely fictitious name for a fictitious entity having no relation to [Anderson Equipment Company]." Further, new assets will be subject to liability by the amendment since John Doe 1 had no assets and Anderson Equipment does.

690 A.2d at 1241–42. (citations omitted). The instant case is distinguishable, as the assets of the Shop Rite store actually served are the *same assets* belonging to the real operator.

¶ 21 *Fredericks v. Sophocles*, 831 A.2d 147 (Pa.Super.2003), is also distinguishable. Fredericks fell at 17 Industrial Boulevard. The party initially sued and presumably served was "George Sophocles and Annette Sophocles, t/a Paoli Medical Arts Partnership." That entity did not own the property at 17 Industrial Boulevard but instead owned property down the street. The subject property was owned by Phillips, Fanfera and Sophocles, a Limited Pennsylvania Partnership, t/a Paoli West Professional Park. There was no allegation that service was made at the place where the accident took place. In fact, it appears that there was a sign near the accident site saying "Paoli Professional Park West," and the named defendant was a totally different entity at a different location, "Paoli Medical Arts Partnership." Citing *Powell, supra* and *Anderson Equip. Co., supra*, the Court held that the simple fact that Sophocles might have been a partner in both entities did not mean that Fredericks made a mere mistake in naming the party. *Id.* at 150. Instead, the wrong party was served at the wrong address.

¶ 22 Unlike the instant case, in *Fredericks*, service was not made at the proper place and the complaint did not name the correct corporate name. In addition, no representative of the defendant ever supplied Fredericks with the wrong information. Also unlike the present situation,

there is no showing that the entity running the premises ever got notice of the lawsuit, despite the fact that Sophocles might have been involved in both partnerships.

¶ 23 *Montanya v. McGonegal,* 757 A.2d 947 (Pa.Super.2000), likewise provides no help for Defendant. Montanya claimed injuries in an accident in a car operated by Robert McGonegal, who died before the complaint was filed. The complaint was served at McGonegal's house and accepted by his widow. There is no claim that McGonegal's personal representative resided at that address. Therefore, there is no showing that the correct party, McGonegal's estate, was ever sued or notified. Montanya's claim that Mrs. McGonegal actively misled her by accepting service of the complaint was rejected, as Mrs. McGonegal never indicated whether her husband was alive or dead. The court said mere silence is not active misrepresentation, and therefore does not toll the statute of limitations. *Id.* at 951. Likewise, although McGonegal's insurance company made a reference "Our Insured: Robert McGonegal", that heading was not considered to be fraud or concealment. Again, this was mere silence or non-disclosure by the insurance carrier. In *Montanya,* unlike the present situation, it was *plaintiff* who first identified Robert McGonegal as the defendant, not its carrier. It was up to Montanya, as plaintiff, to find out whether McGonegal was still alive, as he was the named insured under the policy.

## III. Conclusion

¶ 24 In summary, Clark sued the Shop Rite store where she was injured and served the store's agent under the name "Shop Rite," the name under which the store is doing business. Although the complaint named "Shop Rite # 411," that designation is enough to clearly indicate the "corporate name" of the true owner.

The fact that the *wrong* corporate name was added does not change the fact that the *right* corporate name is also on the complaint. Moreover, whether intentional or not, the agent of the true owner of the store actively misrepresented the owner's actual name and that owner is therefore estopped from objecting to correction of the name.

¶ 25 Order reversed. The owner of the store shall be given 20 days from the filing of this Opinion to file an answer to the complaint or any further motions. Jurisdiction relinquished.