J-A23010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRIAN FLANAGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MINE RUN, INC. D/B/A EAGLE | : | No. 187 EDA 2017 |
| STREAM  APARTMENTS, | : | |

Appeal from the Order Entered December 14, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2015-31734

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 20, 2017**

Perhaps surprisingly, one of the most dangerous tasks a plaintiff faces in asserting a premises liability claim is correctly identifying the party in possession of the property at issue. Mere ownership of the property in the public record is not equivalent to being in possession of the property. Also, in an age of ever increasing and changing corporate forms, a plaintiff must be careful to identify the proper entity, whose name may vary only slightly from several related, but distinct, entities.

And yet it should be unsurprising just how necessary identifying the correct party is in the legal system. A person or business entity cannot be held liable for actions legally attributable to another. And the statutory grant of limited liability to corporate forms would be rendered hollow if the courts

_____
*   Former Justice specially assigned to the Superior Court.

did not strictly enforce the legal distinction between corporate entities and their principals.

The issue is thrown into stark relief when the issue of the statutory deadline for filing a claim comes to the fore. A plaintiff who has incorrectly designated a defendant may not be allowed to correct its mistake if the error is not discovered until after the statutory deadline has passed. In turn, this provides incentives for related entities to engage in gamesmanship in raising the issue of an incorrect designation. Thus, there is a long-running tension in our law between respecting the statutory grants of limited liability and deadlines for initiating a claim on the one hand, and discouraging bad faith gamesmanship on the other.

This tension is plainly at play in the appeal currently before us. Appellant Brian Flanagan claims he was injured after slipping on unsalted stairs at a housing complex known as Eagle Stream Apartments. For our purposes, it is undisputed the name "Eagle Stream Apartments" is a fictitious name. **See** Appellant's Brief, at 11; Appellee's Brief, at 3.

The record before us is unclear, but after his fall, Flanagan must have communicated with the operators of Eagle Stream Apartments and learned it held a premises liability policy issued by Greater New York Insurance Company ("GNY"). We draw this inference from several pieces of correspondence that GNY sent to Flanagan's counsel in the two years following his fall.

First, GNY sent counsel a letter requesting further information about the incident to allow GNY to review Flanagan's claim. This letter requested Flanagan's personal information as well as all medical records from the incident. Furthermore, it instructed counsel "[u]nder penalty of spoliation[1] please preserve all physical evidence (shoes, clothing, photos, videos, etc…)"

Slightly over a year later, and approximately two months before the statutory deadline for filing suit, GNY sent counsel a letter indicating its investigation revealed "its insured was not liable as to this loss." In the letter's header, GNY identified its insured as Eagle Stream Trust.

Shortly thereafter, Flanagan filed his initial complaint. He identified the defendant as "Mine Run, Inc., d/b/a Eagle Stream Apartments." The complaint was served on "Eagle Stream Apartments" at the office for Eagle Stream Apartments approximately one month prior to the filing deadline. Pursuant to the Rules of Civil Procedure, Mine Run was required to file preliminary objections or an answer to the complaint by January 11, 2016. In its preliminary objections filed on January 26, 2016, Mine Run argued Flanagan had failed "to allege any factual basis in support of the allegation

---

[1] "'Spoliation of evidence' is the non-preservation or significant alteration of evidence for pending or future litigation." *Pyeritz v. Commonwealth of Pennsylvania*, 32 A.3d 687, 692 (Pa. 2011), *citing* *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999).

that Defendant was responsible for the 'ownership,' 'maintenance,' 'possession,' or 'control' of 'that location.'"

Flanagan responded by filing a first amended complaint eighteen days after the statute of limitations had run. Flanagan amended the complaint by removing "Mine Run, Inc.," thereby naming "Eagle Stream Apartments" as the defendant. Furthermore, he conceded that pursuant to his investigation, Eagle Stream Apartments was operated by an entity known as Eagle Stream Trust. Flanagan thus argued his amendment was merely a correction and did not name a new entity as a defendant beyond the deadline imposed by the statute of limitations.

Interestingly, Mine Run continued to engage in this litigation, even though Flanagan had removed it as an explicit defendant. For instance, counsel for Mine Run filed untimely preliminary objections to the amended complaint, asserting Flanagan had failed to seek or gain permission from Mine Run or the court, as required under the Rules of Civil Procedure, before filing the amended complaint.

Flanagan later sought leave of court to file a second amended complaint, substantially similar to the first amended complaint. Counsel for Mine Run continued to oppose Flanagan's efforts, despite the fact that, by its own admission, the amended complaint would remove Mine Run from the case. Ultimately, the court denied Flanagan's request for leave to file the second amended complaint. Furthermore, the court dismissed Mine Run's

objections to the first amended complaint. Thus, the first amended complaint became the operative pleading.

Counsel for Mine Run filed an answer and new matter to Flanagan's first amended complaint. However, the caption did not reflect the caption to the first amended complaint, but rather the caption of Flanagan's initial complaint. This distinction is significant because, as noted, the first amended complaint does not identify Mine Run explicitly, while the initial complaint did. Despite the fact the first amended complaint did not name Mine Run as a defendant, Mine Run asserted "Eagle Stream Apartments is in no way associated with Defendant [sic] Mine Run, Inc., nor is it a fictitious name registered to Mine Run, Inc." Furthermore, Mine Run asserted that Flanagan's claims were barred by the applicable statute of limitations.

Mine Run subsequently filed for summary judgment, once again maintaining the caption from the initial complaint that explicitly named it as a defendant. Mine Run again asserted that it was "in no way connected with Eagle Stream Apartments[.]" Furthermore, it admitted Flanagan's first amended complaint "omitted "Mine Run, Inc." from the caption and instead purported to assert claims against "Eagle Stream Apartments[.]" Mine Run also acknowledged that the first amended complaint asserted "that an entity other than Mine Run, Inc. operates Eagle Stream Apartments[.]" Nonetheless, Mine Run filed the motion seeking summary judgment on

Flanagan's claims against an entity with which it had consistently denied being associated.

The court granted summary judgment in a one sentence order. The order did not explicitly identify the reasoning supporting the decision. Flanagan filed this timely appeal.

In its opinion on appeal, the court takes issue with the prolix nature of Flanagan's concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Certainly, Flanagan's statement, which covers twelve pages, is anything *but* concise, especially considering the limited nature of the issues raised in the motion for summary judgment.

Flanagan argues the trial court's lack of reasoning in the record for granting summary judgment forced him to expand his statement. We direct counsel's attention to Pa.R.A.P. 1925(b)(4)(vi), which addresses just this situation:

> If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver.

Regardless, it is also clear Flanagan did not seek to raise a multitude of issues. Nor did Flanagan fail to identify the basis of the argument he raises on appeal. This much is confirmed by the trial court's discussion of the application of the statute of limitations in its opinion on appeal. Under these

circumstances, we decline to find Flanagan has waived the argument he raises on appeal. We therefore turn to the substance of Flanagan's appeal.

Flanagan has appealed from the court's grant of summary judgment. We review a challenge to the entry of summary judgment as follows:

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted; brackets in original).

The legal issue in this case involves the interplay of the statute of limitations with the Rules of Civil Procedure. Generally, a plaintiff may amend a complaint to correct a name or even add a new party, so long as he obtains consent from the adverse party or leave of court. *See* Pa.R.C.P. 1033. "Leave to amend … should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an

adverse party." **Hill v. Ofalt**, 85 A.2d 540, 557 (Pa. Super. 2014). The rule of liberal leave to amend is premised upon a preference to have claims decided on their merits as opposed to strict enforcement of legal technicalities. **See id**.

Liberal leave to amend, however, does not apply after the deadline imposed by the statute of limitations for the claim has passed. **See**, **e.g.**, **Ferraro v. McCarthy-Pascuzzo**, 777 A.2d 1128, 1132 (Pa. Super. 2001). This exception is necessary, as allowing amendment of claims after the deadline renders statutes of limitation meaningless. Generally, amendments that violate the applicable statute of limitation are to be denied. **See id**.

Pennsylvania courts have long sought to derive a rule that synthesizes these competing policies, sometimes with contradictory results. However, the current version of Rule 1033, which became effective on April 8, 2017, after this appeal was filed, represents the most developed solution to this conflict. It provides that an amendment correcting the name of a party after the deadline imposed by the statute of limitations is permissible so long as three conditions are met: (1) the affected party is given notice of the action within ninety days of the statutory deadline; (2) the affected party is not prejudiced in maintaining its defense on the merits; and (3) the affected party knew or should have known that it was the intended defendant despite the mistake in the original complaint. **See** Pa.R.C.P. 1033(b).

The Explanatory Comment to the 2017 amendment states that it "is consistent with existing case law and codifies current practice." Thus, the 2017 amendment was not intended to introduce a new rule. Our review of existing precedent comports with the Explanatory Comment.

In 2006, this Court addressed an appeal with similar circumstances. *See Clark v. Wakefern Food Corp.*, 910 A.2d 715 (Pa. Super 2006). Plaintiff Clark filed and served a slip-and-fall complaint against "Wakefern Food Corporation t/a Shop Rite #411." *Id*., at 717. "As it turns out, the Shop Rite in question was not owned by Wakefern, a New Jersey Corporation, but instead by a different entity." *Id*.

The trial court denied Clark leave to amend her complaint to correct the name of the defendant to "Trio Food Centers, Inc." *Id*., at 716 n.1. Clark appealed, and the panel held:

> It is not disputed that service was properly made at the store where the alleged slip and fall took place.
>
> …
>
> The defendant in this case is certainly the Shop Rite store upon whose property Clark allegedly fell. It is undisputed that the store is operating as a Shop Rite supermarket. Although the number of the store may or may not have been correct in the caption, "Shop Rite" was served and the owner and operator of the store is using the corporate name, "Shop Rite." Therefore, under [Pa.R.C.P. 2176 and 2177], there was proper service on the corporate owner of the store.
>
> …
>
> In the instant case, it is the assets of the entity operating a Shop Rite at 301 West Chelten Avenue, sued as Shop Rite # 411,

which are subject to liability. While Wakefern should not be subject to liability, the true owner of the store where the manager accepted service and the insurance carrier started processing the claim should be. … *When the owner of the store wants its customers to think they are at a "Shop Rite," and a customer later sues "Shop Rite" and makes service on the very store premises by serving the person in charge, the actual corporate entity created to own the store should not be heard to complain*. To find otherwise would contradict the purpose of Pa.R.C.P. 2177, which permits service on a business entity by the name under which it does business and advertises to the public.

Therefore, although Wakefern may be dismissed from the complaint, we are constrained to reverse and remand for the amendment of the complaint. The defendant store may then file an answer or other pleading, containing the actual name of its corporate owner.

*Id*., at 716-717 (order rearranged for readability; emphasis supplied).

Thus, the panel held the owner of the Shop Rite had notice of the claim before the statutory deadline, and was aware that it was the intended defendant despite the mistake in the initial complaint. Contrary to current Rule 1033, the panel did not explicitly address whether the owner had been prejudiced in its ability to defend on the merits. This is understandable, as that party had not been explicitly identified yet. *See id*., at 716 n.1. Instead, the panel focused on whether the assets subject to liability had been modified.

We do not believe that anything contained in **Clark** is contradicted by the current version of Rule 1033. Ultimately, even if there is a conflict, Flanagan is due relief on appeal under either test.

Here, Mine Run has not disputed service was effectuated at the "Eagle Stream Apartments" where Flanagan allegedly fell. Furthermore, the proper defendant in this case is certainly the "Eagle Stream Apartments" upon whose property Flanagan allegedly fell. Although Flanagan misidentified the corporate owner of the fictitious name of "Eagle Stream Apartments," "Eagle Stream Apartments" was served and the owner and operator of the property is using the name "Eagle Stream Apartments." Therefore, under the Rules of Civil Procedure, there was proper service upon the owner and operator of Eagle Stream Apartments. Furthermore, the assets subject to liability are, and have been, the assets of the owner of Eagle Stream Apartments. As such, pursuant to *Clark*, Flanagan's first amended complaint was appropriate under the applicable version of Rule 1033.

Similarly, it is undisputed that Flanagan's first amended complaint was filed within 90 days of the deadline imposed by the statute of limitations. The owners and operators of Eagle Stream Apartments have known that they were the intended defendants despite Flanagan's mistake in the initial complaint. Indeed, the fact that counsel for Mine Run has been asserting defenses on behalf of unknown party(ies) indicates that the owner and operator have been kept fully apprised of this proceeding. The delay in filing preliminary objections to the initial complaint, despite the apparently obvious error, certainly suggests a coordination of strategy between Mine Run and the owner and operator. Thus, we would conclude Flanagan's first

amendment was proper pursuant to the current, but technically not applicable, version of Rule 1033.

Mine Run is certainly entitled to be dismissed as a defendant, based upon the record currently before us. But the owner and operator of Eagle Stream Apartments at the time of Flanagan's fall is not.[2]

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Justice Fitzgerald joins the memorandum.

Judge Dubow files a dissenting statement.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2017

---

[2] It appears at this point that Eagle Stream Trust was the owner of the property upon which Eagle Stream Apartments is located at the time of Flanagan's alleged fall. It is not clear at this point whether Eagle Stream Trust was in possession of the property at that time.