William R. GRIGSBY, t/a Grigco Waste Oil Service of Dover, Delaware, Plaintiff,

v.

CROWN CORK & SEAL COMPANY, INC., a foreign corporation, Defendant.

Civ. A. No. 82–411.

United States District Court, D. Delaware.

Nov. 9, 1983.

---

Harold Schmittinger and William D. Fletcher, Jr., of Schmittinger & Rodriguez, P.A., Dover, Del., for plaintiff.

Alan T. Boyd, Neal J. Levitsky, of Bayard, Brill & Handelman, P.A., Wilmington, Del., for defendant.

## MEMORANDUM OPINION

STAPLETON, District Judge.

Crown Cork & Seal Company, Inc., ("Crown") operates manufacturing plants in Fruitland, Maryland and Winchester, Virginia. At the time of the events giving rise to this suit, William Grigsby ("Grigsby") was in the business of collecting and reselling used oils. In the late '60's or early '70's, Grigsby was contacted by one of Crown's plant managers. He was informed that Crown's manufacturing process generated a waste oil which was contaminated with water, pieces of dirt, cigarette butts, wiping towels, neoprene putties, etc. At this time, Crown asked Grigsby if he would be interested in the oils. Crown also informed Grigsby that the waste oils which were generated by Crown's plant operations were petroleum-based solvents "and washed lumber extruded in those solvents."

Beginning in 1972 and continuing up until sometime during 1979, Grigsby removed waste oils from Crown's plants for a fee under a series of agreements between the parties. Crown's plant managers knew that Grigsby intended to recycle and sell portions of the waste materials he removed from the plants and it is agreed that the waste oil was his to do with as he liked once it was in his possession.

Grigsby was arrested and convicted in the State of Maryland for transporting and storing toxic and hazardous substances without the appropriate state licenses and approval. The toxic and hazardous substances which Grigsby was convicted for transporting and storing were found in the materials of Crown. As a result of this conviction, Grigsby brought this action alleging intentional and fraudulent concealment, breach of express and/or implied warranty of merchantability and breach of express and/or implied warranty of fitness for a particular purpose. As a result of Crown's activities and his criminal conviction, Grigsby claims to have suffered severe and serious mental stress and anguish, damage to his personal and business reputation, damages in the form of extensive legal fees and fines, loss of the enjoyment of a good business reputation and loss of business licenses.

Crown has moved for summary judgment on each of the claims which Grigsby has asserted based on Delaware's version of the Uniform Commercial Code. In support of its motion Crown maintains that it has only purchased services from Grigsby and that there has been no sale of goods to which the Code applies. Grigsby responds, on the other hand, that the transactions between the parties consisted of an exchange of Grigsby's services for Crown's waste oil and cash payments and that such an exchange constitutes a sale of goods under the Code. He stresses in uncontradicted deposition testimony that he would have had to insist upon a higher cash payment if the waste oil had not been of value to him. The issue thus presented appears to be one of first impression in Delaware and, indeed, in the country.

The express and implied warranty sections of the Code relied upon by Grigsby prescribe certain rights of a "buyer" of "goods" against a "seller" of "goods." 6 Del.C. §§ 2–313, 2–314, 2–315. "Seller" is defined as a "person who sells or contracts to sell goods." 6 Del.C. § 2–103. "Goods" includes "all things ... which are moveable at the time of identification to the contract

... other than the money in which the price is to be paid, investment securities ... and things in action. 6 Del.C. § 2–105(1). Finally, a "sale" is declared to consist of "the passing of title from the seller to the buyer for a price." 6 Del.C. § 2–106.

 I agree with Grigsby that Crown's waste oil falls within the Code's broad definition of "goods." I also agree that services can constitute "a price" so that an exchange of goods for services can constitute a sale of goods under the Code. Section 2–304 states that "the price can be payable in money or otherwise" and the Delaware Study Comment explains that this provision makes "the exchange of goods for services subject to Article 2," the "Sales" Article of the Code.

I predict, however, that the Supreme Court of Delaware would find the Grigsby-Crown transactions to be beyond the scope intended for the Code by its draftsmen. While it is true that Crown had title to the waste oil prior to each pickup and Grigsby had title to the waste oil after each pickup, the transaction did not consist of a "passing of title from the seller to the buyer" in return for the payment of a "price." Crown surrendered title by abandoning the waste oil and Grigsby acquired title by taking possession of abandoned property. As a result, Crown did not warrant the merchantability or fitness of its waste under the Code any more than the ordinary citizen warrants the merchantability or fitness of his or her garbage at the time of a garbage collection.

This is not a case in which a manufacturer contracts to transfer a waste product to another in order to realize its residual value. Crown's waste oil was available without payment to anyone who wanted it. Since its value was apparently insufficient to motivate others to take possession of it, Crown was willing to pay for Grigsby's removal services. This fact does not, however, convert an abandonment into a sale.

Crown's motion for summary judgment on Grigsby's Code claims will be granted.