J-A04002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROLYN PURVIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CAREN M. CARNEY | |
| Appellee | No. 1177 MDA 2017 |

Appeal from the Judgment Entered August 9, 2017
In the Court of Common Pleas of York County
Civil Division at No: 2015-SU-2515-84

BEFORE: STABILE, NICHOLS, AND RANSOM,[*] JJ

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 12, 2018**

Appellant, Carolyn Purvis, appeals from the August 9, 2017 judgment entered in favor of Appellee, Caren M. Carney. We affirm.

The parties dispute the terms of a written contract (the "Contract") between them whereby Appellant purchased an Irish wolfhound (the "Dog") from Appellee. Appellant claims she is the sole owner of the Dog. Appellee claims she remained co-owner of the Dog, with Appellant in sole possession, after execution of the Contract. The dispute arose when Appellee did not deliver to Appellant the American Kennel Club ("AKC") registration certificate for the Dog. Instead, Appellee retained the AKC certificate, which identifies

_____

[*] Retired Senior Judge assigned to the Superior Court.

both Appellant and Appellee as the Dog's owner. On July 24, 2015, Appellant filed this breach of contract action, alleging that Appellee breached the Contract in listing herself as an owner on the AKC certificate. Complaint, 7/24/15, at ¶¶ 16-29. Appellant's requested relief was to have herself listed as sole owner on the AKC certificate. *Id.* Appellee filed preliminary objections on August 19, 2015, alleging that the complaint failed to state a claim upon which relief could be granted. *See* Pa.R.C.P. No. 1028(a)(4). Specifically, Appellee claimed the Contract does not require her to register the Dog solely in Appellant's name. Preliminary Objections, 8/19/15, at ¶ 10. The trial court overruled the preliminary objections by order of September 21, 2015.

Appellee answered the complaint on October 19, 2015 and, with leave of court, filed an amended answer on July 25, 2016. The amended answer included a counterclaim for breach of contract alleging (1) that Appellant permitted the Dog to breed in violation of the Contract; (2) that Appellant failed to protect the Dog from sustaining a leg injury; and (3) that Appellant failed to grant Appellee regular access to the Dog, as required under the Contract. Amended Answer, 7/25/16, at ¶¶ 30-50. After several rounds of preliminary objections from Appellant and amended answers from Appellee, Appellant answered the counterclaims on October 17, 2016. On April 27, 2017, the trial court denied Appellant's motion for judgment on the pleadings.

The parties proceeded to a June 27, 2017 bench trial, at the conclusion of which the trial court found that Appellant and Appellee were the Dog's co-

owners. The trial court also found that Appellant would remain in sole possession of the Dog so long as she continued to abide by certain conditions set forth in the Contract. Finally, the trial court found against Appellee on her counterclaims, concluding that Appellant had not breached any provision of the Contract. Appellant filed a timely post-trial motion that the trial court denied on July 11, 2017. The verdict was reduced to judgment on August 9, 2017, and this timely appeal followed.

Appellant presents five questions, but in essence she argues that the trial court erred in refusing to find that Appellant is the Dog's sole owner. Appellant's Brief at 8. We conduct our review as follows:

> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.***, ____ A.3d ____, 2018 WL 1372202 at *2 (Pa. Super. Mar. 19, 2018).

"A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a

duty imposed by the contract and (3) resultant damages." ***Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania***, 895 A.2d 595, 600 (Pa. Super. 2006), ***appeal denied***, 907 A.2d 1103 (Pa .2006).  Instantly, the existence of a contract is not in dispute.  The parties dispute whether Appellee had a duty to transfer full ownership of the Dog to Appellant and, if so, the extent of Appellant's damages as a result of the alleged breach.  We must therefore interpret the Contract's terms.

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties.  In cases of a written contract, the intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter.  When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.  When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances.  A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.  While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468–69 (Pa. 2006).  Further, we must interpret a contract as a whole, give effect to all of its provisions, and avoid interpreting one part to annul another. ***Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.***, 936 A.2d 1109, 1113 (Pa. Super. 2007).  "In addition, a preferred contract interpretation ascribes under all circumstances 'the most reasonable, probable, and natural conduct to the

parties.'" ***Id.*** (quoting ***Midomo Co., Inc. v. Presbyterian Housing Dev. Co.***, 739 A.2d 180, 191 (Pa. Super. 1999)).

The Contract spans two pages and is titled "Crionnacht Irish Wolfhounds Sales/Co-ownership Agreement." Contract, page 1, heading. The opening paragraph identified Appellee as the seller/breeder and Appellant as the buyer. It explains that the Dog "now owned by the seller, will be transferred to the buyer." The Contract specifies that the seller will issue a completed AKC litter registration certificate to the buyer upon the buyer's fulfillment of various conditions. ***Id.*** at page 1, opening paragraph.[1] In essence, Appellant was to be in possession of the Dog and responsible for its daily care. Several of the conditions, which are set forth in numbered paragraphs, reference the Dog's "co-owner," but the Contract does not expressly identify that person. For example, paragraph 5 states that when the Dog reaches maturity, "it may be bred with or by any of the co-owners." ***Id.*** at page 1, ¶ 5. Likewise, paragraph 6 governs "accidental breedings other than those approved by the co-owner." ***Id.*** at page 1, ¶ 6. Finally, per paragraph 8, the "buyer agrees never to spay or neuter this dog without the written permission of the co-owner." ***Id.*** at page 1, ¶ 8. The second page, containing the parties'

---

[1] As set forth above, Appellee counterclaimed for breach of several conditions, but the trial court found in Appellant's favor on Appellee's counterclaims. Appellee did not file a cross appeal.

signatures, identifies Appellee as the seller and both Appellee and Appellant as buyers. *Id.* at page 2.

The trial court summarized the parties' testimony as follows:

Appellant testified that she was willing to enter into a short-term co-ownership with Appellee. Appellant agreed that this was a conditional sale and that it is common practice for the breeder to register themselves as a co-owner with the AKC. Appellant acknowledged that she had asked Appellee to change the [Dog's] name on the AKC registration on two occasions. Appellant agreed that the contract is titled 'sales/co-ownership.' Appellant further agreed that paragraph 8 of the [Contract] also references the term 'co-owner.' When asked about whether there is a difference between the titled owner and the registration with the AKC, Appellant answered that the AKC registration contains certain rules such as restricting people from breeding the dog and registering the puppies. Appellant lastly testified that it was her belief that she would become the sole owner of the [Dog] upon completion of the conditions listed in the [Contract].

Appellee is both the seller and breeder of the [Dog]. Appellee testified that the second page of the [Contract] lists both Appellant and Appellee as buyers. Appellee clarified that she has no duties to care for the [Dog] unless something were to happen to Appellant and that this is the purpose of having a co-ownership agreement. Appellee testified that she submitted the AKC registration with Appellant's input. Appellee further testified that Appellant understood that she was entering a co-ownership agreement from prior experiences. Appellee acknowledges that the [Contract] fails to define the term 'co-owner,' however, the term appears in several places in the [Contract]. Appellee explained that she gave the AKC registration to Appellant so that Appellant could enter the dog in shows and show lure coursing events.

Appellee testified that she explained to Appellant that the price of $2,500 was the price to buy into a co-ownership and that the price for owning the [Dog] outright would be much higher. Appellee mentioned that Appellant had several questions regarding the [Contract], including why the contract differed from

[Eileen] Flanagan's[2] contract. Appellee later testified that there is a huge difference in price for sole ownership due to the reason of protecting the dog from turning into a puppy mill. In addition, a breeder would typically only offer sole ownership to an individual they have known for a long time and who has a history of responsible breeding and genetic testing.

Trial Court Opinion, 9/28/17, at 4-5 (record citations omitted).

Appellant's brief offers little legal authority to support her argument. She notes, correctly, that the Contract in several places identifies her as buyer, and that it does not identify who the "co-owner" is. Nonetheless, the Contract, among other things, requires Appellant to obtain the co-owner's permission to spay or neuter the Dog and prohibits Appellant to register puppies from accidental breedings without the co-owner's permission. Contract, at ¶¶ 6, 8. In addition, paragraph 2 provides that Appellant could "never" sell or transfer of the Dog to anyone other than the seller or seller's estate. Contract, at ¶ 2. This provision nullifies any argument that Appellant could become the sole owner of the Dog through fulfillment of certain conditions.

Though the Contract does not expressly identify the co-owner, we observe that it is titled a "Sales/Co-ownership Agreement. Further, the second page of the Contract **unambiguously** identifies Appellee as seller and **both parties** as buyers. Thus, despite the Contract's failure to identify the

---

2 According to the trial court opinion, Eileen Flanagan is a well-known Irish wolfhound breeder. Trial Court Opinion, 9/28/17, at 3.

co-owner, it expressly identifies both parties to the contract as buyers. Based on the unambiguous identification of Appellee as a buyer, common sense dictates that she is the co-owner referenced elsewhere in the document. As noted above, a court must give effect to all provisions of a contract and avoid interpreting one provision to annul another. *Gaffer*, 936 A.2d at 1113. Appellant invites an interpretation whereby the effect of the provisions identifying her as buyer annul other provisions of the Contract.

In light of the foregoing, the trial court construed the Contract to provide that Appellant and Appellee were the Dog's co-owners, with Appellant to remain in exclusive possession. We discern no error in the trial court's construction. Because we accept the trial court's reasonable construction of the Contract, we can only conclude that Appellant failed to establish that Appellee was in breach by refusing to list Appellant as sole owner on the AKC certificate.[3]

Judgment affirmed.

---

[3] Given our conclusion, we need not address Appellant's request for attorney's fees. Appellee's Brief contains an undeveloped request for attorney's fees. *See* Pa.R.A.P. 2744 ("[A]n appellate court may award [...] a reasonable counsel fee [...] if it determines than an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate, or vexations."). Appellee does not develop any argument that Appellant's conduct met the requirements of Rule 2744. We therefore decline to remand for an award of attorney's fees to Appellee.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/12/2018</u>