J-A17007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROSEMARY FARMAKIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTINA FARMAKIS-KING AND | : | |
| JAMIE ZEIGLER CO-EXECUTORS OF | : | |
| THE ESTATE OF JAMES FARMAKIS | : | No. 1282 WDA 2024 |
| AND CHRSITINA FARMAKIS-KING | : | |
| AND JAMIE ZEIGLER CO-TRUSTEES | : | |
| OF THE JAMES FARMAKIS FAMILY | : | |
| TRUST | : | |
| | : | |
| | : | |
| APPEAL OF: LINDA S. HAHN | : | |

Appeal from the Order Entered October 1, 2024
In the Court of Common Pleas of Mercer County Civil Division at No(s):
No. 2019-22

BEFORE: McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED: October 3, 2025**

Rosemary Farmakis ("Rosemary") appeals from the order entered in favor of Christina Farmakis-King and Jamie Zeigler, Co-Executors of the Estate of James Farmakis, and Christina Farmakis-King and Jamie Zeigler, Co-Trustees of James Farmakis Family Trust (collectively, "Appellees"). We affirm.

The trial court aptly summarized the facts as follows:

> This matter concerns certain debts allegedly owed by Decedent, James ("Jim") Farmakis to his wife, [Appellant] Rosemary Farmakis . . .[Rosemary] claims that [Appellees] are liable to her on two different debts pursuant to a 2013 Agreement and 2014 Demand Note. [Rosemary] also seeks

to have certain transfers Jim Farmakis made of real estate he owned by deeds to a Trust (the James Farmakis Family Trust) voided pursuant to the Pennsylvania Uniform Voidable Transactions Act [("PUVTA")]. . . .

A 1995 Promissory Note represents the first relevant debt Jim Farmakis owed to Rosemary Farmakis. The principal amount of the Note was $100,000 and there was to be interest in the amount of 10%. In 1998, Jim Farmakis entered into an Agreement with his business partner, Joseph ("Joe") Biscotti, which Agreement concerned a golf course in Conneaut, Ashtabula County, Ohio that Jim owned. Jim wished to sell the golf course and the Agreement gave Rosemary a priority interest in the proceeds of the sale in the amount of $125,000. The golf course closed without being sold and Joe Biscotti sued Jim Farmakis in Ohio for allegedly failing to pay Joe for work he did at the golf course. In 2007, there was a Judgment Entry in the Ohio litigation reflecting Rosemary's priority interest in the proceeds of the sale of the golf course. In 2009, Jim Farmakis gave Rosemary Farmakis a mortgage on certain of his Ohio real estate, and he transferred into joint ownership with Rosemary land in Pennsylvania on which is situated a Burger King franchise, along with a lease concerning the same.

Around 2013, Jim Farmakis entered into an agreement with a Conneaut, Ohio Home Builder to sell land that was once part of the golf course as individual lots upon which homes would be built. These lots/homes were to comprise a development called The Shores. Counsel for Nancy Biscotti, the widow and personal representative of Joe, negotiated an agreement [("2013 Agreement")] between Nancy Biscotti, Jim Farmakis, and Rosemary Farmakis. Pursuant to the agreement, *inter alia*, when one of the lots sold (called PUD lots), Rosemary Farmakis would receive $1,350. In 2014, Jim Farmakis signed a Demand Note for $100,000 owed to Rosemary Farmakis [("2014 Demand Note")]. In 2017, Jim Farmakis transferred real estate situated in both Ohio and Pennsylvania into the James Farmakis Family Trust, of which [Appellees] are co-Trustees. The PUD lots were among the real estate transferred.

Jim Farmakis died on February 12, 2018, survived by Rosemary, and his three adult children, none of whom are

- 2 -

by Rosemary. Two of his children are [Appellees] in this matter. Rosemary Farmakis also has three adult children, none of whom are by Jim. Rosemary's daughter, Linda Hahn, has served as her agent and guardian *ad litem* [due to Rosemary's incapacitation]. The marriage was a second marriage for both Jim and Rosemary Farmakis [and they were married for 25 years].

Trial Court's Decision Pursuant to Pa.R.C.P. 1038 ("Decision"), filed 8/27/24, at 1-3.

Rosemary brought the instant suit against Appellees alleging three counts: Count I – breach of the 2013 Agreement; Count II - breach of the 2014 Demand Note; and Count III – violation of the PUVTA. After a bench trial, the parties filed proposed findings of facts and conclusions of law. The court subsequently entered an order finding in favor of Appellees on all counts. Rosemary filed a post-trial motion, which was denied. This appeal followed.

Rosemary raises the following issues:

I.   When a husband and wife enter into an agreement which entitles the wife to payment of $1,350 when each of the husband's building lots are sold or transferred and husband transfers all of his lots to an irrevocable trust less than a year before his death, is the wife entitled to a lump sum payment for each lot transferred to the trust?

II.  When a husband gives his wife an executed demand note as evidence of her $100,000 loan to him and his executors provide no evidence of forgery, fraud, coercion, duress or satisfaction of the note, is the wife entitled to payment on the Note from the husband's estate?

III. When a husband, who is aware of the debt he owes to his wife, transfers all of his property to a trust he established less than a year prior to his death for the exclusive benefit of his three adult children, is the wife

> entitled to relief on the fraudulent transfers pursuant to the Pennsylvania Uniform Voidable Transactions Act?

Rosemary's Br. at 5 (issues reordered).

Our standard of review in a non-jury trial is well-settled:

> We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

***Davis ex rel. Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 873 (Pa.Super. 2001) (citation omitted). Our scope of review over questions of law is plenary. ***Century Indem. Co. v. OneBeacon Ins. Co.***, 173 A.3d 784, 802 (Pa.Super. 2017).

Rosemary's first issue involves the 2013 Agreement. Rosemary argues that she is entitled to a lump sum payment of $170,100 from Appellees pursuant to the 2013 Agreement. Rosemary's Br. at 9-10. She maintains that the 2013 Agreement provided that she would receive $1,350 when each of Jim's 134 PUD lots were "sold or transferred." ***Id.*** at 9. Rosemary argues that when Jim transferred all remaining 126 PUD lots to the James Farmakis Family Trust in 2017, she was entitled to a lump sum payment of $170,100 for each of the lots transferred because the 2013 Agreement stated that she was to be paid when each lot was "transferred." ***Id.*** at 14-15.

Interpretation of a contract poses a question of law. ***Stein Revocable Trust v. Gen. Felt Indus., Inc.***, 749 A.2d 978, 980 (Pa.Super. 2000). "The

fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." ***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001). "The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself." ***Id.*** Further, we "do not assume that a contract's language was chosen carelessly, nor do [we] assume that the parties were ignorant of the meaning of the language they employed." ***Id.*** Where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." ***Prudential Prop. and Cas. Ins. Co. v. Sartno***, 903 A.2d 1170, 1174 (Pa. 2006) (citation omitted).

Here, paragraph three of the 2013 Agreement states:

> 3. ROSEMARY FARMAKIS shall also receive at the time of closing of the sale or transfer of each of the 134 sublots on the PUD property at the premises the sum of $1,350.00 [if all 134 PUD sublots are sold or transferred, she shall receive the total sum of $180,900.00 (134 sublots X $1,350.00)]. At time of closing, ROSEMARY FARMAKIS shall execute a partial release of lien created by this agreement involving the sublot being sold.

2013 Agreement, dated 11/14/13, at ¶ 3 (brackets in original).

The trial court rejected Rosemary's claim that the 2013 Agreement was breached when Jim transferred the then-unsold PUD lots to the James Farmakis Family Trust in 2017 and she did not receive $1,350 per transferred lot. Decision at 3-4. The court found that, based on paragraph three's language in the 2013 Agreement, the transfer of unsold lots to the Trust was not a transfer that triggered a duty to pay $1,350 for every transferred lot at

the time of transfer. *Id.* at 4. The court pointed out that "the purpose of the PUD lots was to sell land piecemeal to different persons." *Id.* The court further emphasized that under its interpterion of paragraph three, Rosemary will still receive $1,350 per lot when each lot is sold. *See* Opinion Pursuant to Pa.R.A.P. 1925(a) ("Rule 1925(a) Op."), filed 11/27/24, at 7.

The court did not err in its interpretation of the 2013 Agreement. Paragraph three plainly states that Rosemary would receive $1,350.00 at the time of sale or transfer of "each" PUD lot. The intent of the parties was to pay Rosemary and Nancy Biscotti money as each lot sold. Paragraph three does not contemplate a lump sum payment from an estate planning transfer. Rather, Rosemary is entitled to payment as each lot is sold. Appellees agree that they will continue to pay Rosemary $1,350 as each lot is sold. Appellees' Br. at 27, 32. The trial court did not err in finding that Rosemary was not due a lump sum payment when Jim transferred the PUD lots to the James Farmakis Family Trust.

Rosemary's next issue concerns the 2014 Demand Note. Rosemary argues that in 2014, she loaned Jim $100,000 pursuant to the 2014 Demand Note. Rosemary's Br. at 9. She alleges that Jim retained counsel to prepare the 2014 Demand Note, which he executed in the presence of counsel and delivered to Rosemary. *Id.* Rosemary asserts that Jim never made any payments on the 2014 Demand Note. *Id.* She maintains that since there are no allegations by Appellees that the 2014 Demand Note was the result of

forgery, fraud, duress, or coercion, Rosemary is entitled to payment on the Note plus six percent statutory interest. ***Id.***

In support of her claim, Rosemary points to her deposition testimony, in which she testified that she loaned Jim $100,000 in 2014 and Jim received the money from her.[1] ***Id.*** at 12. She maintains that "[a]s proof of consideration for the 2014 loan," she produced at her deposition "investment account statements indicating a withdrawal of $34,000 on June 11, 2014 and another withdrawal in the second quarter of 2014 in the amount of $69,000, which totals $103,000." ***Id.*** Rosemary also points out that her daughter, Linda Hahn, testified at trial that Rosemary gave her the 2014 Demand Note to safeguard it and Jim's attorney, Roger R. Shaffer, Jr., testified that Jim left his office on June 24, 2014 in possession of the Demand Note. ***Id.*** at 12-13.[2]

For a contract to be formed, "there must be three requisite elements: an offer, acceptance, and consideration." ***Estate of Caruso v. Caruso***, 322 A.3d 885, 896 (Pa. 2024). "Consideration consists of a benefit to the promisor or a detriment to the promisee." ***Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.***, 895 A.2d 595, 600 (Pa.Super. 2006) (citation omitted).

---

[1] Rosemary's deposition was admitted into evidence by the trial court. ***See*** Order, filed 1/31/24, at 1 (unpaginated).

[2] Rosemary makes an additional argument that she is a "holder in due course" of the 2014 Demand Note as a negotiable instrument under the Uniform Commercial Code and thus is entitled to enforce it. Rosemary's Br. at 11. Rosemary failed to raise this claim in the trial court or in her Pa.R.A.P. 1925(b) statement. Therefore, the claim is waived. ***See*** Pa.R.A.P. 302(a), Pa.R.A.P. 1925(b)(4)(vii).

"Consideration must actually be bargained for as the exchange for the promise." *Id.* (citation omitted).

Here, the trial court found that the 2014 Demand Note lacked consideration and thus, a valid contract did not exist. It explained:

> [B]ased on all the evidence received during the trial, the [c]ourt finds that there was no loan after the 2013 Agreement. There are no contemporaneous records of a loan after the 2013 Agreement, and what documents were produced showed that any such loan happened before the 2013 Agreement. Thus, in addition to the termination of any resulting debt pursuant to the 2013 Agreement, and in light of said termination, there was no consideration for the 2014 Demand Note.

Decision at 4. The court further observed that "[t]he contrary evidence was that [Rosemary] testified at a deposition that she loaned Jim $100,000 on two separate occasions," but "Rosemary was in cognitive decline and was found to be incapacitated." Rule 1925(a) Op. at 9.

The record supports the court's conclusion that the 2014 Demand Note lacked consideration. The trial court did not credit Rosemary's evidence that she transferred $100,000 to Jim in 2014. At her deposition, Rosemary testified that she gave Jim the money but could not "recall all the[] details" as to whether she handed Jim the money or how he acquired it. Rosemary Dep., 10/21/19, at 39-40. Rosemary presented two documents as alleged proof that she lent Jim the money. The first document is a Statement of Account from

Allstate Insurance. R.R. 329.[3] Rosemary testified that she had invested money in Allstate and withdrew money from her Allstate account to loan Jim. Rosemary Dep. at 12. The document showed that Rosemary made withdrawals from the account totaling $69,000 between April 1, 2014 and June 30, 2014. R.R. 329. The second document is dated June 11, 2014 and shows that Rosemary made a withdrawal of $34,000 from her bank account. R.R. 330. The payee is listed as "Rosemary G. Farmakis." *Id.* There is a handwritten note on the document that states: "Lent to Jim to pay real estate taxes." *Id.* There is no further information in this document. When asked about this document, Rosemary testified:

> Q. [W]hose handwriting is ["Lent to Jim to pay real estate taxes"]?
>
> A. Mine.
>
> Q. And when did you write that?
>
> A. I don't have a date when I wrote it.
>
> Q. So how does this show what you lent Jim?
>
> A. It's just my word.
>
> Q. When you say it's just your word, what do you mean? Do you have any documents besides this in response to the document request?
>
> A. No[.]

Rosemary Dep. at 13-14.

---

[3] "[W]here the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." ***Commonwealth v. Holston***, 211 A.3d 1264, 1276 (Pa.Super. 2019) (*en banc*).

Rosemary's withdrawal documents do not prove that Jim received any money. They merely show that Rosemary allegedly withdrew $69,000 from her Allstate account during the second quarter of 2014, and $34,000 from her bank account on June 11, 2014. The withdrawals could have been for anything that Rosemary wished. Rosemary did not present any evidence, such as a check, wire transfer, deposit, or other documents, that Jim received the money in connection with the 2014 Demand Note.

Likewise, Linda Hahn testified that she had no documentation that showed that any money "changed hands" from Rosemary to Jim under the 2014 Demand Note. N.T., 4/2/24, at 69-70, 117. Similarly, Attorney Shaffer testified that he had no recollection as to whether Jim received any money from Rosemary in return for the 2014 Demand Note. *Id.* at 9-11. The trial court, as trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, was free to believe all, part or none of the evidence. *See Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa.Super. 2018). Since Rosemary did not produce any evidence that Jim received money in return for the 2014 Demand Note, the court did not abuse its discretion in finding that the 2014 Demand Note lacked consideration and thus was not valid.

Rosemary's final claim is that she was entitled to relief under the PUVTA because Jim's transfers to the James Farmakis Family Trust "were intended to defraud Rosemary and other creditors by rendering his estate insolvent." Rosemary's Br. at 10. She notes that the 2017 transfers occurred less than

one year before Jim's death. *Id.* at 20. Rosemary maintains that the following "badges of fraud" apply to Jim's 2017 real estate transfer: the transfer was to an insider (close family) and was without consideration; the transfer was concealed from Rosemary; the transfer involved substantially all of Jim's assets; and Jim's intent was to become insolvent to avoid creditors. *Id.* at 16-21. Rosemary argues that the foregoing supports her argument that Jim intended to defraud her. In Rosemary's view, "[t]he circumstances of the transfers in 2017 clearly indicate Jim's intention to preserve his real estate for his adult children by preventing satisfaction of the debts he owed to his creditors, including his primary creditor, Rosemary." *Id.* at 21. She thus maintains that, pursuant to the PUVTA, she is entitled to a lien against all real estate transferred to the Trust. *Id.* at 24.

Under the PUVTA, a transfer is fraudulent as to creditors "1) if it was made with intent to hinder or defraud a creditor" or "2) if the debtor did not receive reasonably equivalent value and either the debtor's remaining assets were insufficient for a business that he was undertaking or the debtor was incurring debts beyond his ability to pay as they came due." *Xtreme Caged Combat v. Zarro*, 247 A.3d 42, 48 (Pa.Super. 2021) (citing 12 Pa.C.S.A. § 5104).

The trial court found that Rosemary was due no relief under the PUVTA. It opined that since it found that no money was owed on either of Rosemary's breach of contract claims, "there is no debtor-creditor relationship to justify

voiding the 2017 transfer from Jim Farmakis to the James Farmakis Family Trust." Rule 1925(b) Op. at 10. The court further explained:

> Rosemary Farmakis was only a creditor of Jim Farmakis at the time of the transfers insofar as she is entitled to $1,350 when a PUD lot is sold or transferred. This implicates the deed transferring the PUD lots into the James Farmakis Family Trust . . . The deed expressly states that the transfer was subject to the 2013 Agreement, and [Appellees] do not dispute Rosemary's continuing rights thereunder.

Decision at 5.

The court did not err. In 2017, the PUD lots were among the real estate that Jim deeded to the James Farmakis Family Trust (hereinafter, the "PUD Deed"). The PUD Deed contained a provision that the transfer was subject to the 2013 Agreement:

> ALL LANDS FURTHER BEING SUBJECT TO that certain Agreement between James Farmakis and Rosemary Farmakis, and Nancy I. Biscotti, in her individual capacity and as Executor of the Estate of Joseph Biscotti, which was recorded on December 20, 2013 with the Ashtabula County Recorder's Office in Book 557, Pages 913-925.

PUD Deed, 9/16/17, at 2. Accordingly, pursuant to the PUD Deed, Rosemary is still entitled to receive $1,350 as each PUD lot is sold in accordance with the terms of the 2013 Agreement. The PUD Deed thus protects Rosemary's interests and does not indicate an intent to defraud. Rosemary's claim under the PUVTA fails.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/03/2025