**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE A/S/O BATES COLLISION, INC. JAMES MYERS, ANITA MORGAN, LOSSIE AUTO SERVICE, AND BENEDICTINE SISTERS OF ERIE, INC., | : | No. 19 WAP 2024 |
| | : | |
| | : | Appeal from the Order of the Superior Court entered December 21, 2023, at No. 1482 WDA 2021, Reversing the Judgment of the Court of Common Plea of Erie County entered November 12, 2021, at No. 12888-18. |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | ARGUED: April 9, 2025 |
| | : | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BATES COLLISION, INC., | : | |
| | : | |
| Appellee | : | |

**OPINION**

JUSTICE DONOHUE                                        DECIDED: JANUARY 21, 2026

On November 9, 2018, plaintiff, Erie Insurance Exchange ("Erie"), **acting as subrogee** of Bates Collision, Inc. ("Bates"), James Myers, Anita Morgan, Lossie Auto Service and Benedictine Sisters of Erie, Inc. (collectively "insureds"), filed a civil complaint against defendant, United Services Automobile Association ("USAA"). Erie, seeking reimbursement for payment of a claim it made to its insureds following a fire, sued USAA

because USAA failed to preserve a vehicle Erie believed to be critical evidence and the true culprit in the fire. We granted review in this case to determine whether Erie as subrogee of its insureds had any right to recovery against USAA and whether its claim for "promissory estoppel" was actually a masked cause of action for spoliation of evidence not recognized in Pennsylvania. *Erie Ins. Exch. v. United Serv. Auto. Assn.,* 322 A.3d 880 (Pa. 2024) (per curiam). Our answer to the first question is dispositive. When acting as subrogee of its insureds, Erie did not have any right of recovery against USAA. We therefore reverse the judgment of the Superior Court and reinstate the trial court's order entering judgment in favor of USAA.

**Facts and Procedural History**

On January 22, 2017, a fire occurred at Bates leading to significant damages to Bates and several vehicles inside the shop. Erie, as the insurer of Bates and the several vehicles inside the shop, paid its insureds over $1.6 million dollars in damages pursuant to an Insurance Policy which also specifically envisioned that Erie could seek reimbursement for its payment.

Erie's Insurance Policy with Bates provides:

**8.    OUR RIGHT TO RECOVER FROM OTHERS**

After we make a payment under this policy, we will have the right to recover from anyone else held responsible. This right will not apply under Property Protection if you have waived it in writing prior to loss. Any insured is required to transfer this right to us, and do nothing to harm this right. Anyone receiving payment from us and from someone else for the same loss will reimburse us up to our payment.

Cross-Motion for Summary Judgment, Exhibit 1-A, Insurance Policy ("Insurance Policy"), General Policy Conditions, ¶ 8. The Insurance Policy also spells out the insured's duties after a loss:

18. **YOUR DUTIES AFTER A LOSS**

                              *      *      *

        j. Agree to help us enforce any right of recovery against any party liable for "loss" under this policy. This will not apply if you have waived recovery rights in writing prior to a "loss".

Insurance Policy, § X(18)(j). Further,

### SECTION XI – DEFINITIONS

                              *      *      *

- "Loss" means direct or accidental loss of or damage to covered property.

*Id.* § XI.

Erie suspected that a 2013 BMW 3 Series, 335i ("BMW") was to blame for the fire, and therefore alerted USAA, the BMW's insurer, and BMW of North America, the BMW's manufacturer, of its "potential claim for subrogation" and took steps to inspect and preserve the evidence. Complaint, 11/9/2018, ¶¶ 6-18. Counsel for Erie wrote to BMW of North America to say that it had been retained by Erie to investigate the fire, provided "notice of a potential claim against [BMW of North America] for subrogation[,]" and it indicated that it "may attempt to recover any amounts it pays for the damages." *Id.* Exhibit A (Letter from Robert Gaul, Esq. to BMW of North America, LLC (Jan. 26, 2017)).

Following a joint inspection of the BMW by representatives of Erie, USAA and BMW, Erie emailed USAA and USAA's expert to confirm that USAA took possession of the BMW and that it would "have it wrapped, secured and preserved for possible future examination." Complaint, 11/9/2018, ¶¶ 14-17 (citing Email, 2/23/2017). In the email, Erie requested information about where the BMW would be stored and restated its request for preservation, stating "[p]lease make sure the car is preserved in its current condition and is not in any way altered or disturbed." *Id.* USAA responded with the location and phone number for Insurance Auto Auction ("IAA"), where the BMW was towed and stored, and explained, "[w]e have requested that the vehicle be wrapped and

preserved for potential investigation." *Id.* ¶ 18 (citing Letter, 2/23/2017). Despite these communications, on March 28, 2017, IAA sold the BMW at a salvage auction.

Upon learning the BMW's fate, Erie as subrogee of its insureds filed a tort suit raising one claim of promissory estoppel against USAA in the Court of Common Pleas of Erie County. Complaint, 11/9/2018. Erie's intention to proceed **as subrogee of its insureds** is apparent from every aspect of the Complaint. The civil cover sheet lists the lead plaintiff as "Erie Insurance Exchange a/s/o[1] Bates Collison Inc." and the lead defendant as USAA. Complaint, 11/9/2018, civil cover sheet. The captions on the notice to defend and the complaint consistently identify the plaintiff as "Erie Insurance Exchange a/s/o Bates Collision, Inc., James Myers, Anita Morgan, Lossie Auto Service and Benedictine Sisters of Erie, Inc." and the defendant as USAA. Complaint, 11/9/2018. On the civil cover sheet where the plaintiff must choose the nature of the case i.e., the most accurate description of its primary case, Erie supplied that it was bringing a tort claim which did not fall in the listed categories of intentional, malicious prosecution, motor vehicle, etc. and instead selected "other" and supplied "[s]ubrogation" as the type of claim, not promissory estoppel. *Id.*, civil cover sheet.[2]

---

[1] Erie uses "a/s/o" and "as subrogee of" interchangeably throughout its pleadings. *Compare* Complaint, 11/9/2018, ¶ 1 ("Plaintiff, Erie Insurance Exchange a/s/o Bates Collision, Inc., James Myers, Anita Morgan, Lossie Auto Service and Benedictine Sisters of Erie, Inc. is a reciprocal insurance exchange with members in Pennsylvania and other states which issues policies of insurance in the State of Pennsylvania.") *and* Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment, 8/16/2021, at 1 ("Plaintiff, Erie Insurance Exchange as subrogee of Bates Collision, Inc., et al., by and through its attorneys…").

[2] Thus, this case is not merely about an inarticulate self-designation. Concurring & Dissenting Op. at 3 (stating that Erie's self-designation may be inarticulate or misleading to some but is not fatal). Erie's designation of itself **as subrogee** and the cause of action as one involving **subrogation** permeates the litigation. Moreover, we accepted allowance of appeal in this case to decide the predicate issue of whether, as a matter of law, Erie as subrogee of its insureds could recover against USAA in a lawsuit. *See* infra p. 9. This is the question that we answer in this opinion. The Concurring and Dissenting (continued…)

According to the Complaint, Erie's investigators determined that the fire originated from and was caused by the BMW. *Id.* ¶¶ 6, 12. Erie pled that it insured Bates and several cars in the shop, *id.* ¶¶ 5, 8, and that it paid out approximately 1.6 million dollars in claims, *id.* ¶ 9. Based on payments made to insureds under the relevant insurance policy provisions and Pennsylvania law, Erie averred that it "became subrogated to any and all claims its insureds had against [USAA] or any other party responsible for the damage." *Id.* ¶ 11. The Complaint alleges that USAA failed to preserve the vehicle and as a result, "Plaintiff cannot pursue its claim against the manufacturer or the owner of the vehicle or anyone involved in maintaining the vehicle as it was unable to perform an invasive laboratory examination, testing and/or other investigation necessary to precisely identify the components inside the BMW which caused the fire." *Id.* ¶ 21.

As subrogee, Erie brought one count of promissory estoppel against USAA. *Id.* It alleged that due to USAA's alleged failure "to abide by its verbal and written commitments and promises, Plaintiff is unable to pursue a claim against the manufacturer of the vehicle, the owner of the vehicle or anyone else because the vehicle was not preserved." *Id.* ¶ 25. According to the Complaint, "[i]njustice can only be avoided by enforcing the promise and holding [USAA] responsible for the damages sustained by Plaintiff's insureds." *Id.* ¶ 26. Finally, "Plaintiff, Erie Insurance Exchange a/s/o Bates Collision, Inc., James Myers, Benedictine Sisters of Erie, Lossie Auto Service and Anita Morgan" requested judgment in its favor and against USAA "in the amount of $1,624,217.15 plus interest, costs, attorney fees and any other relief this Court may deem just and proper." *Id.* at 5.

USAA filed an answer to the Complaint denying that the BMW caused the fire. Answer, 1/8/2019, ¶ 6. USAA maintained that it was the negligence of Erie's insured,

---

Opinion does not express any disagreement with our conclusion that Erie as subrogee cannot recover against USAA.

Bates, that caused the fire. *Id.* ¶ 4. USAA underscored that neither it nor its agents sold the BMW. *Id.* ¶ 20. Thereafter USAA and Erie filed cross-motions for summary judgment, the resolution of which is at the heart of the present decision. USAA maintained that Erie's subrogation rights are limited by the Insurance Policy's provisions: it may only recover against parties for loss and is limited to "the direct and accidental loss of damage to covered property." Cross-Motion for Summary Judgment, 7/6/2021, ¶ 35 (citing Insurance Policy, §§ X(18)(j), XI). According to USAA, because it did not cause the property damage for which Erie was contractually obligated to pay its insureds, subrogation principles do not apply to Erie's claim. *Id.* ¶ 36. Moreover, it asserted that the promissory estoppel claim was a masked cause of action for spoliation of evidence, a cause of action that does not exist in Pennsylvania. *Id.* ¶¶ 37-38. For its part, Erie asked the trial court to follow a California case, *Cooper v. State Farm Mutual Automobile Ins. Co.*, 177 Cal. App. 4th 876, 902 (Ca. 2009), and recognize the cause of action for promissory estoppel. Erie's Memorandum of Law in Support of Motion for Summary Judgment, 5/5/2021, at 19.

Persuaded by USAA, the trial court viewed Erie's promissory estoppel cause of action as the equivalent of a claim for negligent spoliation of evidence and denied relief because a cause of action for negligent spoliation of evidence does not exist in Pennsylvania. *See Pyeritz v. Commonwealth,* 32 A.3d 687, 689 (Pa. 2011) (holding that no cause of action for negligent spoliation of evidence exists in Pennsylvania). The trial court emphasized that any promissory estoppel claim by Erie would fail because the damages alleged were speculative and uncertain. Trial Court Opinion, 11/20/2021, at 15. In the alternative, the trial court concluded that Erie's claim, because it was presented as a subrogation claim, failed as a matter of law. According to the court, subrogation principles do not apply here because USAA did not cause the property damage for which

Erie was contractually obligated to pay its insureds. *Id.* at 16. The trial court granted USAA's motion for summary judgment and denied Erie's, and therefore directed the Prothonotary to enter judgment in favor of USAA and against Erie. Trial Court Order, 11/21/2021.

Erie appealed to the Superior Court. Erie challenged the trial court's reliance upon *Pyeritz* and the trial court's alternative holding that Erie, "as a subrogation carrier, had no standing to pursue a claim against [USAA] because [USAA] did not cause the damages for which Erie was obligated to pay even though [USAA's] action prevented Erie from pursuing the entity which caused the damages for which Erie was obligated to pay." *See* Pa.R.A.P. 1925(b) Statement, 12/23/2021. Erie argued that it was acting "as a subrogating carrier" when it "received the promise that USAA breached" and "[s]ince the promisee is the named Plaintiff, Erie has standing to pursue this action." Erie's Substituted Superior Court Brief, 3/2/2023, at 42. Thus, Erie admitted that it was pursuing the claim as subrogee and merely challenged the trial court's conclusion that it did not have "standing" as subrogee.

An en banc Superior Court panel reversed the trial court's order granting summary judgment in favor of USAA.[3] *Erie Ins. Exch. v. United Serv. Auto. Ass'n*, 307 A.3d 1221 (Pa. Super. 2023) (en banc). After identifying the applicable standard of review for summary judgment, the Superior Court addressed the arguments regarding the claim of promissory estoppel. The Superior Court observed that Erie's complaint contained only one claim for "promissory estoppel," a doctrine "invoked to avoid injustice by making

---

[3] Initially, a three-judge panel of the Superior Court affirmed with one judge dissenting, but the Superior Court granted en banc reconsideration and withdrew the prior opinions. The parties submitted substituted briefs and presented oral argument to an en banc panel of the Superior Court. *Erie Ins. Exch. v. United Serv. Auto. Ass'n*, 1482 WDA 2021, 2023 WL 183160 (Pa. Feb. 9, 2023) (order). At every juncture, USAA urged affirmance of the trial court based upon its findings that Erie, as subrogee, could not maintain a promissory estoppel claim.

enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his own position to his own detriment." *Id.* at 1225 (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)).[4] The court found that the underlying facts set forth in Erie's complaint provided for the possible recovery of damages based upon promissory estoppel, and it rebuked the trial court for relying upon *Pyeritz* to dismiss Erie's complaint. *Id.* at 1225-26 & n.5. The Superior Court also found that the trial court erred in opining that Erie's damages were speculative and uncertain. *Id.* at 1226 n.6. Despite USAA's repeated arguments that Erie, as subrogee of its insureds, could not pursue a promissory estoppel cause of action,[5] the Superior Court did not address this alternative holding of the trial court.

Judge Olson issued a dissenting opinion, which Judge Kunselman joined. *Erie Ins. Exch.*, 307 A.3d 1221 (Olson, J., dissenting). In the dissent's view, the trial court properly relied upon *Pyeritz*, which held that Pennsylvania does not recognize a cause of action of negligent spoliation of evidence as a mechanism to recoup damages. *Id.* at 1231. According to the dissent, *Pyeritz*'s reasoning applied equally to the instant case, and "[t]he speculative nature of the damages that the [*Pyeritz*] Court held required rejection of the cause of action is the same regardless of the theory of liability." *Id.* It rejected Erie's reliance upon the *Cooper* case as inconsistent with this Court's reasoning in *Pyeritz* and also highlighted that Erie's damages were more uncertain and speculative

---

[4] The plaintiff must establish that: "(1) the promisor made a promise that he should have reasonably expected to induce an action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can only be avoided by enforcing the promise." *Erie Ins. Exch.*, 370 A.3d at 1225 (quoting *Crouse*, 745 A.3d at 610).

[5] USAA's Superior Court Brief, 6/17/2022, at 46-49; USAA's Substituted Superior Court Brief, 3/23/2023, at 18, 21-26 (arguing that "[a]s a threshold and dispositive matter, Erie lacked standing, and did not have a subrogation claim against USAA as a matter of law"); Superior Court Oral Argument (en banc), 8/9/2023 (passim).

than those in *Cooper*. The dissent likewise did not discuss the propriety of the promissory estoppel action by Erie as subrogee of its insureds.

This Court granted review to address two questions:

> a. Was the Superior Court's decision inconsistent with Pennsylvania law on subrogation, as Erie's suit against [USAA] as the subrogee of its insureds was limited to their rights to recover from the party responsible for their property loss, and Erie had no right of recovery against [USAA] as a matter of law as it was undisputed that [USAA] did not cause the fire?

> b. Did the Superior Court rule inconsistently with this Court's decision in *Pyeritz v. Commonwealth* [613 Pa. 80], 32 A.3d 687 (Pa. 2011)[,] by ignoring that Erie's "promissory estoppel" claim was a masked cause of action for negligent spoliation of evidence not recognized in Pennsylvania, which also posed an issue of substantial public importance, and was its decision also inconsistent with Pennsylvania law on promissory estoppel?

*Erie Ins. Exch. v. United Serv. Auto. Assn.,* 322 A.3d 880 (Pa. 2024) (per curiam) (reordered for ease of discussion). Our resolution of the first question resolves this appeal.

USAA accuses the Superior Court of ignoring the threshold subrogation issue despite it being an independent ground for the trial court's decision. USAA's Brief at 36. According to USAA, there is no doubt that Erie's claim was a subrogation claim, and Erie "lacked standing and did not have a subrogation claim or right of recovery against USAA as a matter of law." *Id.* USAA maintains that Erie, as subrogee of its insureds, was limited to the insureds' rights to recover from the party responsible for their property loss as set forth in the Insurance Policy. Because the loss suffered by Erie's insureds was the loss of or damage to covered property resulting from the fire, Erie had no right to recovery

against USAA as a matter of law given that it was undisputed that USAA did not cause the fire. *Id.* at 37-38.[6]

In support, USAA cites the Insurance Policy's provision that an insured's duty after loss is to "help [Erie] enforce any right of recovery against any party liable for 'loss' under this policy" and that loss is defined as "direct or accidental loss of or damage to covered property." *Id.* at 38 (quoting Insurance Policy, §§ X(18)(j), XI). USAA insists that its alleged failure to preserve the BMW after the fire did not cause the loss to the Erie insureds. *Id.* USAA maintains that it was not a party liable for loss for whom the insureds had a "right of recovery" under the Insurance Policy. Therefore, USAA asserts that "Erie's insureds, and thus Erie in its subrogation action, had no claim against USAA[.]" *Id.* at 39. "[T]he loss alleged by Erie in the [C]omplaint is not the covered 'loss' for the Erie insureds as defined in the [Insurance] Policy for which Erie is subrogee[.]" *Id.* at 40. In sum, Erie's subrogation rights went no further than a direct claim for property loss against the party liable for the loss.

Erie first addresses USAA's contention that it lacked standing, insisting that it had standing based upon the contractual obligation to preserve the evidence between itself and USAA. Erie's Brief at 57. In support, it recites fundamental principles of standing, such as that a plaintiff must demonstrate aggrievement to establish standing. *Id.* (citing *In re Application of Biester*, 409 A.2d 848, 851 (Pa. 1979); *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003)). Erie highlights that "[i]n a promissory estoppel action, the party who has standing to pursue the claim is the recipient of the breached promise." *Id.* (citing

---

[6] We are at a loss to understand the Superior Court's failure to address this threshold issue. Given the prominence of this issue in the briefs and oral argument, it is difficult to classify the omission as inadvertent. In its rush to determine the merits of an issue of first impression, the intermediate court rendered a published opinion with an inherent flaw. We accepted allowance of appeal to address the propriety of the Superior Court's presumed but unspoken blessing of a subrogee's pursuit of the promissory estoppel claim.

*Pennsy Supply Inc. v. Am. Ash Recycling Corp.*, 895 A.2d 595 (Pa. Super. 2006)).[7] Erie accuses USAA of attempting to confuse an otherwise simple issue: "USAA took on a binding contractual obligation when it made a promise that Erie justifiably relied on to its detriment. Erie now seeks recovery due to USAA's breach of that promise." *Id.*

Erie attempts to demonstrate that it properly pled its cause of action as a counterargument to USAA's assertion that it did not have a claim for promissory estoppel as subrogee. *Id.* at 58. In support, Erie states that the rules of civil procedure do not require a plaintiff "'to specify the legal theory or theories underlying the complaint. He or she may merely allege the material facts which form the basis of a cause of action.'" *Id.* (quoting *Burnside v. Abbott Labs*, 505 A.2d 973, 980 (Pa. Super. 1985)). Erie argues that it met this requirement by pleading promissory estoppel as a theory of recovery. *Id.* Erie maintains that other jurisdictions recognize promissory estoppel claims under the same facts. *Id.* at 59 (collecting cases).

In further support that it properly pled its claim, Erie contends that its civil cover sheet listing subrogation as the cause of action is of no moment. *Id.* at 59 (citing *Young v. Wetzel*, 252 A.3d 698, 2021 WL 980254 (Pa. Commw. 2021) (non-precedential)). According to Erie, it listed "subrogation" as the basis for the action "in an effort to identify how Erie's interest in the action came to be and the reasons Erie was aggrieved via payment of damages resulting from the BMW that would give standing to maintain **any** cause of action in the first place." *Id.* Erie warns that accepting USAA's arguments would "shatter the subrogation industry[.]" *Id.* at 59-60. It explains that no insurer that retains evidence actually caused the fire in any reasonable factual scenario. *Id.* at 60.

---

[7] In addressing the viability of its promissory estoppel claim, i.e., the other issue on which we granted review, Erie cites to *Pennsy* for another premise: that a promissory estoppel claim may be brought by a third party who justifiably relies on the promise made to the promisee. Erie's Brief at 13 n.2 (citing *Pennsy,* 895 A.2d at 606).

Next, Erie writes that "even if the cause of action was characterized as one of 'subrogation,' it would not garner a different result" because "[s]ubrogation is not a cause of action[,]" but instead is an equitable and flexible doctrine. *Id.* at 60 (citing *Arlet v. Workers' Comp. Appeal Bd.*, 270 A.3d 434, 441-42 (Pa. 2022)). Subrogation "is a legal fiction recognized by the courts and specific statutory provisions which allow an insurance carrier to step into the shoes of its insured and pursue claims against any responsible party after it reimburses the insured for damages." *Id.* (citing *Arlet*, 270 A.3d at 442). Erie cites also to *Jacobs v. Northeastern Corp.*, 206 A.2d 49, 53 (Pa. 1965), as providing that "'[t]he right of subrogation is not founded on contract'" but instead is a "'creature of equity … enforced solely for the purpose of accomplishing the ends of substantial justice.'" *Id.* (quoting *Jacobs*, 206 A.2d at 53). It also cites this Court's statement in *Gildner v. First National Bank and Trust Company*, 19 A.2d 910, 915 (Pa. 1941), that "'[t]he doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience.'" *Id.* at 61 (quoting *Gildner*, 19 A.2d at 915). Because the principles underlying subrogation are not overly constrictive, Erie insists that "[w]hether [it] obtained this promise in its individual capacity, its capacity as the subrogee, or both, is irrelevant to the validity of the promise or the resulting cause of action due to its breach." *Id.* at 62.[8]

Erie also disputes USAA's central contention that the Insurance Policy limits it from pursuing a promissory estoppel theory, contending that its contractual right of subrogation is broad enough that it does not limit it from pursuing a promissory estoppel claim. It argues that "[e]ven if obtained **solely** as a subrogee of [Bates], the [Insurance] Policy

---

[8] In making this argument, Erie disputes USAA's insistence that it cannot be acting as subrogee. Erie states that it was "in [its] role, as subrogee" of Bates that it retained counsel and experts to inspect the fire and identify the party responsible; sent out notice to preserve the BMW; and obtained a legally binding promise to preserve the BMW. Erie's Brief at 61-62.

extends Erie's contractual right of subrogation to bring an action for damages sustained by the insured to pursue 'anyone else held responsible.'" *Id.* at 62 (quoting Insurance Policy, General Policy Conditions, ¶ 8). It asserts that this language "does not limit Erie from pursuing USAA under a promissory estoppel theory." *Id.*

Finally, Erie argues that "to the extent USAA's argument on this issue rests on the [sic] Erie being labeled as a subrogee of Bates rather than in its own right in the caption of the complaint, such argument ignores Pennsylvania's pleading standard that liberally allow amendment at any time up until trial, particularly where there is a misnomer as to the name of one of the parties." *Id.* at 62-63 (citing Pa.R.C.P. 1033). Erie states that Pennsylvania courts often allow amendments to the party in interest captioned in the complaint so long as it does not result in surprise or prejudice. *Id.* at 63 (citing *Piehl v. City of Philadelphia*, 987 A.2d 146 (Pa. 2009); *Clark v. Wakefern Food Corp.*, 910 A.2d 715 (Pa. Super. 2006); *Hill v. Ofalt*, 85 A.3d 540 (Pa. Super. 2014)). Erie states that regardless of its labeling in the caption, there would be no prejudice because USAA has been on notice of Erie's identity from the inception of the lawsuit. *Id.*

In reply, USAA reminds the Court that Erie's suit is brought solely as the subrogee of its insureds, and it cites to *Insurance Company of North America v. Carnahan*, 284 A.2d 728, 729 (Pa. 1971), for the proposition that an insurance company's rights as subrogee do not rise above those of its insureds. USAA's Reply Brief at 18-19.[9]

USAA emphasizes that Erie's promissory estoppel claim is based on its standing as the "recipient of the breached promise … [b]ut again, Erie, as subrogee plaintiff, was

---

[9] In a footnote, USAA briefly addresses *Pennsy*, 895 A.2d 595, which Erie cited for the premises that the recipient of a breached promise has standing to bring a promissory estoppel claim, Erie's Brief at 57, and that a third party who justifiably relies on a promise made to another may have standing to bring a promissory estoppel claim, *id.* at 13 n.2. USAA writes that *Pennsy* is distinguishable and "does not support Erie's premise that a carrier bringing suit **solely** as a subrogee for its insureds has standing to bring a claim in its own right." USAA's Reply Brief at 20 n.5.

limited to the claims of its insureds against the party responsible for the damage to their property resulting from the fire, thus had no claim against USAA." *Id.* at 20. USAA argues that Erie **as subrogee** had "no ability or standing to pursue, in its own right, a separate claim that USAA allegedly assumed a contractual obligation to indefinitely preserve the BMW after the fire." *Id.* at 20. Similarly, USAA rejects Erie's argument that it was not required to identify a cause of action in its complaint but instead could have averred facts which if proven established a cause of action. *Id.* at 20-21 (citing Erie's Brief at 58). Regardless of the facts alleged, a proper party must bring the cause of action. *Id.* at 20-21.

USAA observes that Erie invoked the Insurance Policy to support its ability to pursue the promissory estoppel claim, but overlooks that the right to recovery "[q]uite clearly … refers to the insured's right to recover for their property loss" as is transferred to Erie under the terms of the policy. *Id.* (citing Insurance Policy, General Policy Conditions, ¶ 8). Finally, USAA urges this Court to reject Erie's suggestion that it should be permitted to amend the complaint to include Erie as a party. *Id.* at 24-25. USAA argues, inter alia, that Erie waived this argument because it failed to request or argue for amendment in the trial court. *Id.* at 26.

**Analysis**

Our case law establishes the basic premise that the doctrine of subrogation aims "to place the ultimate burden of a debt upon the party primarily responsible for the loss." *Jones v. Nationwide Property & Cas. Ins. Co.*, 32 A.3d 1261, 1270 (Pa. 2007); *see also Arlet*, 270 A.3d at 441-42 (stating that the doctrine intends to "place the ultimate burden of a debt on the primarily responsible party"). Black's Law Dictionary similarly defines subrogation as, inter alia, "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured

against a third party with respect to any loss covered by the policy." *Subrogation*, BLACK'S LAW DICTIONARY (12th ed. 2024).[10]  Thus, when the mechanism is operative, the insurer-subrogee who paid a loss under the insurance policy substitutes itself for the insured and is entitled to exercise its rights "with respect to any loss covered by the policy." *Id.*

Pursuant to the basic premise as expressed in our case law, which reflects general jurisprudential principles, a subrogee may only recover for the loss it paid and against the party liable for the loss.  A subrogee must first tender payment to the subrogor to satisfy the debt before its right to subrogation accrues, and the doctrine applies when the debt sought by the subrogee is the same debt for which it already tendered payment.  *Wimer v. Pennsylvania Emps. Benefit Tr. Fund*, 939 A.2d 843, 853 (Pa. 2007) (stating that subrogation applies when an insurer "pays out of his own funds a debt that is primarily payable from the funds of another.")  (citing *Employers Ins. Of Wausau v. Com., Dept. of Transp.*, 865 A.2d 825, 833 (Pa. 2005)).

Consistent with these basic principles of subrogation, other courts have recognized that insurance subrogation rights are limited to the loss covered by the insurance policy and paid to the insurer.  For instance, in *Colorado Farm Bureau Mutual Insurance Company v. CAT Continental, Incorporated*, 649 F. Supp. 49 (D. Colo. 1986), Colorado Farm Bureau insurance company filed a products liability action as the subrogee of its insured against a manufacturer of a truck that the insured used until it was destroyed by fire.  The insurer subrogee sought imposition of punitive damages in the complaint, but the defendant manufacturer contended that damages were limited to the amount paid

---

[10]  This is the third definition of subrogation.  The first and second definitions speak more to the general mechanics of subrogation.  According to those definitions subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor[]" and "[t]he equitable remedy by which such a substitution takes place[.]" *Subrogation*, BLACK'S LAW DICTIONARY (12th ed. 2024).

under the insurance contract which did not include punitive damages. *Id.* at 51. The District Court observed the general rule "'that an insurer, on paying a loss, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss.'" *Id.* at 52 (quoting *Mohl v. NTC of America, Inc.,* 564 F.Supp. 401, 403 (D. Colo. 1982)). The District Court then reasoned:

> Because subrogation does not attach until the insurer has paid its insured, the insurer "is not entitled to be subrogated to rights which are held to enforce payment of other sums which remain unpaid." *United States v. Gisi,* 213 F.Supp. 616, 618 (D. Colo. 1962). Thus "a subrogee is entitled to indemnity only to the extent of the money actually paid to discharge the obligation." *Colonial Penn Insurance Co. v. Ford,* 172 N.J. Super. 242, 411 A.2d 736, 737 (1979).

*Id.* (internal footnote omitted). In that case, the insurer paid out approximately $118,000 in claims, i.e., the general value of the truck at the time of its destruction and was entitled to indemnification "only to the extent of that amount." *Id.* The District Court granted summary judgment in favor of the defendant manufacturer with regard to the claims for punitive damages because the insurer as subrogee may not pursue claims for loss that are not covered by the insurance policy and payout.

Here, the loss that Erie paid out was for the fire loss damage sustained by its insureds. Thus, under subrogation principles, Erie could seek to recoup that payout from the party responsible for the fire loss. Erie brought this suit as subrogee of its insureds, not in its own right. Erie's subrogation rights to recovery were limited to the fire damages for which Erie paid the insureds pursuant to the Insurance Policy.

The Insurance Policy entitles Erie as subrogee to seek recovery from another party held responsible for the relevant "'loss' under th[e] policy", i.e., "direct or accidental loss of or damage to covered property." Insurance Policy, §§ X(18)(j), XI. It could not, as

subrogee, pursue a claim against USAA for preventing it from pursuing its subrogation claim. This is a loss distinct from the loss caused by the fire.[11]

Erie insists that the Insurance Policy envisions recovery in subrogation "'from anyone else held responsible,'" Erie's Brief at 62 (quoting Insurance Policy, General Policy Conditions, ¶ 8), and that this is broad enough to encompass its claim for promissory estoppel against USAA for its failure to prevent the destruction of the BMW. This reading demands too much of the General Policy Conditions of the Insurance Policy. The language of the Insurance Policy must be read in context: the Insurance Policy envisions "[a]fter [Erie] **make[s] a payment under this policy**," that Erie has the right to recover from anyone else responsible. Policy, General Policy Conditions, ¶ 8 (emphasis added). Moreover, the same paragraph requires an insured who receives "payment from [Erie] and from someone else **for the same loss**" to reimburse Erie up to the payment made. *Id.* (emphasis added). Erie's rights (to reimbursement and to seek recovery) derive from the loss suffered by the insured and paid by Erie. The reference to "anyone else held responsible" in the Insurance Policy plainly implies "for the loss" and therefore, does not contemplate Erie as subrogee seeking recovery from anyone else held responsible for other torts, such as Erie alleges against USAA at present.

The underlying tort claim for loss that Erie would have pursued against BMW of North America is separate from the promissory estoppel claim it pursues in the Complaint. Pursuant to the Complaint, subrogee Erie recognized that it could not pursue its

---

[11] Erie's attempt to recast its use of the term "subrogation" and "subrogee" as ways to tell the backstory of its complaint is unconvincing. Erie could conduct investigation and demand preservation of evidence because of its right to subrogate against a third party responsible for the loss. It could have, had it developed the evidence, brought a subrogation lawsuit to recover from the entity responsible for the loss. However, what Erie cannot do is pursue a subrogation lawsuit in which it complains that USAA interfered with its ability to exercise its right to subrogate by failing to preserve the evidence necessary to sustain its claim for loss.

underlying tort claim against the manufacturer or the owner of the vehicle or anyone involved in maintaining the vehicle because it did not have the evidence. Complaint, 11/9/2018, ¶ 21. Erie could not bring the claim for loss as provided for in the Insurance Policy because it could not support such a claim. Instead, Erie went in a different direction and, based on the circumstances arising long after the loss, pursued a separate claim for promissory estoppel based on USAA's conduct which frustrated Erie's ability to pursue the underlying claim for loss. Therefore, the trial court correctly concluded that "[s]ubrogation principles do not apply to Erie IE's[12] claim where USAA did not cause the property damage to which Erie IE was contractually obligated to pay its insureds." Trial Court Opinion 11/12/2021, at 1. The Superior Court either assumed without stating that Erie could pursue a promissory estoppel claim or erred in ignoring this threshold issue that served as an independent ground for the trial court's decision. In either case, the Superior Court decided the merits of the case on a false foundation.

We granted review in this matter to address Erie's right, as subrogee, to pursue a promissory estoppel claim against USAA. Our grant of appeal did not encompass Erie's belated suggestion that it should be granted leave to amend the Complaint to substitute itself as plaintiff. Throughout the proceedings before the lower courts, Erie staunchly held to its position that it was proper to pursue this action as subrogee of its insureds. *See, e.g.*, Erie's Cross-Motion for Summary Judgment, 8/16/2021, at 13 (asserting standing as subrogee); Pa.R.A.P. 1925(b) Statement, 12/18/2021, ¶ 4 (asserting that the trial court erred in concluding that Erie lacked standing). We pointedly granted review to address Erie's ability to bring the promissory estoppel claim as subrogee of its insureds. On the

---

[12] The trial court used "Erie IE" as a shorthand for "Erie Insurance Exchange as Subrogee." Trial Court Opinion, 11/12/2021 at 1.

record before us, where Erie did not seek to amend the Complaint until briefing before this Court, we will not address the issue further.

Erie's arguments in support of its position that it can proceed in this matter as subrogee are misplaced. For instance, Erie conflates the scope of its subrogation rights with an issue of standing. There being no question that Erie brought this action as subrogee, the question of judicial standing would typically be whether the **insureds** had standing to bring a complaint against USAA for promissory estoppel, assuming such a cause of action exists.[13] Even if theoretically the insureds could bring a lawsuit for promissory estoppel as third parties who relied on the promise by USAA to Erie, this was not alleged by Erie. Erie argues solely that it justifiably relied on the promise made to it by USAA, and it does not claim any forbearance or conduct undertaken by its insureds as a result of the promise. *See, e.g.*, Erie's Brief at 57 (arguing that USAA "made a promise that **Erie** justifiably relied on to its detriment") (emphasis added); *id.* at 62 (asserting that Erie obtained the legally binding promise). More importantly, Erie's subrogation rights under the Insurance Policy are limited to recovering the loss from the party responsible for that loss, not to stand in the shoes of its insured for any possible cause of action the insureds might possibly possess. This is not a question of standing. It is a question of the scope of Erie's subrogation rights under the Insurance Policy.

Erie also argues that "[t]he promissory estoppel cause of action was properly pled[;]" that the Pennsylvania Rules of Civil Procedure do not require it to specify the legal theory underlying the complaint; that a complaint need "'merely allege the material facts which form the basis of a cause of action[;]'" and that it need not identify a cause of action at all. Erie's Brief at 57-58 (quoting *Burnside*, 505 A.2d at 980).

---

[13] Given our disposition of the first issue, we do not reach the question of the viability of the cause of action of promissory estoppel in these circumstances.

In defending the adequacy of its pleading of a promissory estoppel cause of action, Erie attempts to align this case with cases from other jurisdictions where a promissory estoppel cause of action was recognized. Erie's Brief at 59. However, in each of the cases cited, the cause of action was brought not by a subrogee but by the party who received the promise in their own right. In *Phillips v. Owners Insurance Company*, No. 2015CV260763, 2016 WL 10570359, at *2 (Ga. Super. Apr. 26, 2016), the insureds sued the insurance company which had promised them to hold a vehicle in safekeeping but subsequently broke the promise and released the vehicle thus frustrating the insureds' products liability claim. Similarly, in *Miller v. Allstate Ins. Co.*, 573 So.2d 24, 25-26 (Fla. Dist. Ct. App. 1990), the claimant sued the insurance company that sold a vehicle that the insurance company had promised to preserve for inspection for purposes of the claimant's products liability claim against the manufacturer. Likewise in *Cooper*, the claimant sued its insurer for failing to preserve a vehicle it had promised to preserve. *Cooper*, 177 Cal. App. 4th at 879. This critical distinction—that none of the cases cited were brought by an insurer as subrogee of the insured—defeats Erie's analogy.

Moreover, Erie's error in bringing this lawsuit as subrogee of its insureds is not the same type of deficiency which was remedied in the cases Erie cites for the premise that that the Pennsylvania Rules of Civil Procedure have liberal pleading standards. For instance, the *Burnside* court was addressing the plaintiff's duty to "set forth the facts upon which a cause of action is based," *Burnside*, 505 A.2d at 980, not the propriety of the plaintiff bringing that cause of action. Likewise, the *Young* case is distinguishable from the present scenario because there, the Commonwealth Court found that a pro se prisoner's mistake in characterizing the cause of action on the civil cover sheet was not dispositive where he pled the cause of action with greater clarity in the complaint itself. *Young*, 2021 WL 980254 at *3. Erie's identification of its claim as one of subrogation and

itself as subrogee permeated its action: it was not only designated as such on the civil cover sheet, but also in the caption, in the prefatory paragraphs, in the complaint, and Erie never denied that it was acting as subrogee pursuing a subrogation claim. Further, before the Superior Court it challenged the trial court's ruling that it could not pursue the claim as its insureds' subrogee. As such, it cannot align this case with *Young*, where the prisoner mistakenly characterized the cause of action on the civil cover sheet.

As to Erie's assertion that rejecting these claims would shatter the insurance industry, such argument is untethered to the defect at issue here. We are not foreclosing a cause of action, but merely finding that Erie incorrectly proceeded on a theory of subrogation. We express no opinion on the viability of a promissory estoppel claim brought by an insurance carrier against a party allegedly responsible for foreclosing its pursuit of subrogation rights as a result of that party's failure to preserve the evidence necessary to prove who was responsible for the loss it paid to its insureds. We hold only that such claim cannot be pursued by Erie as subrogee for the amounts it paid to its insureds as the result of fire damage to its property.

After careful review, we find that the trial court correctly concluded that Erie's subrogation claim fails as a matter of law because its subrogation rights were limited to recovery against any party liable for the direct or accidental loss or damage to covered property. USAA did not cause the property damage for which Erie paid its insureds. Therefore, we vacate the Superior Court's decision and reinstate the trial court's order granting summary judgment to USAA and denying summary judgment to Erie.

Chief Justice Todd and Justices Wecht and Mundy join the opinion.

Justice Brobson files a concurring and dissenting opinion.

Justice Dougherty files a dissenting opinion.

Justice McCaffery did not participate in the consideration or decision of this matter.